## The County of Cook

*v.*

## The City of Chicago.

*Filed at Ottawa October 11, 1895.*

1. Counties—*contract of county in violation of statute absolutely void.* A contract by a county which is in violation of a statute is not merely *ultra vires,* but absolutely illegal and void, so that it cannot become binding by an equitable estoppel.

2. Estoppel—*never grows out of doing of illegal act.* An equitable estoppel can never arise or grow out of the doing of an illegal act or an act prohibited by law.

3. Injunction—*limits of power of equity to restrain a suit at law.* Equity cannot grant an injunction against a suit at law on any ground which would constitute a valid defense to the action at law.

Writ of Error to the Circuit Court of Cook county; the Hon. Murray F. Tuley, Judge, presiding.

ROBERT S. ILES, and EDWARD H. MORRIS, for plaintiff in error:

An act done or deed given in contravention of a statute works no estoppel. *Merriam* v. *Railroad Co.* 117 Mass. 241.

An estoppel cannot arise or grow out of an invalid act, deed or agreement. *Mason* v. *Mason*, 140 Mass. 63; *James* v. *Wilder*, 25 Minn. 305; *Langan* v. *Noble*, 55 Iowa, 52.

The county was without the capacity to enter into the agreement. The doctrine of estoppel is not applied to the case of a party incapable, in law, of making the contract. *Merriam* v. *Railroad Co. supra; Lowell* v. *Daniel*, 2 Gray, 161.

A court of equity is wholly without authority to give effect to an unlawful or invalid agreement. *Merriam* v. *Railroad Co. supra.*

It is of no moment that the county has acquiesced in the possession of the city for a long space of time. A municipality cannot be estopped by long acquiescence, no matter how regular on its face, if, in the first instance, there was no power in the body attempting to act to grant the right. *Attorney General* v. *Marr*, 55 Mich. 445.

An unauthorized act of the agent of a State cannot work an estoppel. *Pulaski County* v. *State*, 42 Ark. 118; *Railroad Co.* v. *Belleville*, 122 Ill. 376.

JOHN MAYO PALMER, Corporation Counsel, and SIG-MUND ZEISLER, for defendant in error:

Equity has jurisdiction to enjoin an ejectment suit on the ground of estoppel. High on Injunctions, sec. 95, p. 86, and sec. 417; *Big Mountain Improvement Co.'s Appeal*, 54 Pa. St. 361; *Thornton* v. *Ramsden*, 4 Giff. 519; *Atwood* v. *Barham*, 2 Russ. 186; *Banking Co.* v. *McKelway*, 4 Halst. Ch. 84.

The above rule is fully recognized in this State in the case of *Catholic Bishop* v. *Chiniquy*, 74 Ill. 317.

The doctrine of equitable estoppel applies to municipal corporations. *Railroad Co.* v. *Joliet*, 79 Ill. 25; *Railway*

*Co.* v. *People ex rel.* 91 id. 251; *Logan County* v. *Lincoln,* 81 id. 156; *Martel* v. *East St. Louis,* 94 Ill. 67.

Any positive acts by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel. *Roby* v. *Chicago,* 64 Ill. 447; *Railroad Co.* v. *Joliet,* 79 id. 39; *Logan County* v. *Lincoln,* 81 id. 156.

Where the contract has been fully executed, the defense of *ultra vires* will not avail either party. *Town of Searcy* v. *Yarnell,* 47 Ark. 269; *McCutcheon* v. *Steamboat Co.* 13 Pa. 13; *Bank* v. *Bank,* 11 Barb. 213; *Bradley* v. *Ballard,* 55 Ill. 413; *Thompson* v. *Lambert,* 44 Iowa, 239; *Hays* v. *Gas Light Co.* 29 Ohio St. 330; *Bank* v. *Rogers,* 125 Mass. 339; *Railroad Co.* v. *Howard,* 7 Wall. 392; *Bank* v. *Matthews,* 98 U. S. 621; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Parish* v. *Wheeler,* 22 id. 494.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The city of Chicago filed this bill in the court below to enjoin the prosecution of a suit in ejectment against it by the county of Cook to recover possession of the "Chicago City Hall," described as the west half of block 39, in the original town of Chicago. The county filed a general demurrer to the bill, which was overruled and a decree entered as prayed. To reverse that decree this writ of error is prosecuted.

It is insisted, first, that the circuit court erred in overruling the demurrer on the ground that the bill shows on its face a complete and adequate remedy at law; and second, because it fails to state a case entitling the complainant to any relief whatever. To the argument of counsel for plaintiff in error in support of the first of these propositions opposing counsel make no reply, and we have not been able to discover a satisfactory answer thereto.

It appears from the allegations of the bill that block 39 is a part of a section of land given by the government to this State to aid in the construction of the Illinois and Michigan canal; that by an act of the legislature, approved February 15, 1831, the canal commissioners were authorized, "if they should be of opinion that it will increase the value of lands in any town laid off on the canal lands that have or may have seats of justice, to give a quantity of land in said town, not exceeding ten acres, to aid in the erection of public buildings, for which donation the Governor shall issue a patent." In pursuance of that power, on November 10, 1831, the canal commissioners executed a deed of donation, and the Governor issued a patent to the county commissioners of Cook county for said block 39, it being recited in the patent that it was conveyed "to aid said county in the erection of public buildings." By a further act of the legislature, entitled "An act to prevent the sale of the public square in the city of Chicago," approved February 4, 1851, it was enacted (sec. 2) that the board of supervisors, and all other county authorities of the county of Cook, and the common council of the city of Chicago, are hereby forbidden to sell, mortgage, encumber or convey said block 39, or any part thereof. Section 3 provides "that nothing in this act contained shall be so construed as to prevent the erection of county buildings on said block 39."

From about 1851 the county and city occupied and owned a building, jointly, in the center of the block, and, as stated in the bill, "by agreement made many years prior to the second day of May, 1868, the interest of the city in the building was eight-twentieths and that of the county twelve-twentieths of the whole structure." It is neither alleged nor claimed that such agreement was entered into prior to the act of February 4, 1851. On the second day of May, 1868, in pursuance of a resolution of its board of supervisors, passed the preceding March, the county entered into a contract with the city, by the

terms of which the city agreed to pay the county $50,000, in consideration of which the latter "granted to the city the west half of the court house then on the block, except the basement, with the privilege of erecting a building, to be used as a city hall, on the west side thereof, the plans of which to be first submitted to and approved by the building committee of the board of supervisors of the county." This agreement was fully carried out by the city, the building erected, with the approval of said committee, costing about $400,000. In October, 1871, all the buildings on the block were burned, and about the 19th of August, 1872, in pursuance of previous action by the city council and board of supervisors, a contract was entered into as follows:

"*First*—The said parties will join in the erection of a public building on said block 39 for the use of the county and city governments, respectively, and the courts of record of said county.

"*Second*—The general exterior design of said building shall be of an uniform character and appearance, as may be hereafter agreed upon by the board of county commissioners and the common council of the city of Chicago.

"*Third*—That portion of said building situated west of the north and south center line of said block shall be erected by the city of Chicago at its own expense.

"*Fourth*—The city of Chicago shall occupy that portion of said block west of said center line for a city hall and offices incidental to the administration of the city government, and for no other purpose whatsoever, except as hereinafter provided.

"*Fifth*—Each of the parties hereto will heat, light and otherwise maintain and furnish its own portion of said building.

"*Sixth*—The necessary expense of improving the grounds around said building, and maintaining the same, shall be paid equally by the said city and county."

The seventh clause contains a covenant on the part of the county that said city of Chicago "shall have the control and occupancy of the said west half of said block for the said city hall and public offices incidental to the government of said city, without hindrance, henceforth forever." Then follows a provision to the effect that if the city shall cease to use the property for the purposes named, the county shall have the right to resume possession thereof, and the city shall forfeit all its rights therein, and the contract become null and void.

In pursuance of this agreement the building now on the block, known as the court house and city hall, was erected, the work being begun early in 1878 and completed several years later, at a cost to the city of about $1,716,000. Since its completion the city has occupied and used that part of the building erected by it, without legal hindrance in its right to do so by the county authorities, until the bringing of the suit to enjoin which this bill was filed.

Whatever right the city of Chicago has in the west half of block 39 must be predicated upon the contract of August 19, 1872. The bill seems to proceed upon the theory that that contract on the part of the county of Cook was *ultra vires*, but that, by the subsequent conduct of the county, an equitable estoppel has arisen against it to question the binding force of the same. We are unable to give our assent to that proposition. The bill shows that the agreement was regularly entered into by the legally constituted authorities of the county, unless it can be said the county of Cook had no power to make it. If such want of power does appear, it must be because the contract is in violation of that provision of the act of 1851 which forbids the county authorities *"to sell, mortgage, encumber or convey said block 39, or any part thereof,"* and if the power is wanting because of such prohibition, the contract is not merely *ultra vires*, but absolutely illegal and void. (See *Penn* v. *Bornman*, 102

Ill. 523, and cases there cited.) The distinction between contracts *ultra vires* and those which are held to be absolutely void, because prohibited by law, is drawn in the late case of *Cadish* v. *Garden City Building Ass.* 151 Ill. 531.

While it is true that an equitable estoppel may be pleaded against a municipal corporation under the rule in this State, we fully concur with counsel for plaintiff in error in their contention that "an equitable estoppel can never arise or grow out of the doing of an illegal act or an act prohibited by law," and the controlling question in the decision of the point whether there was a complete remedy at law therefore is, is the agreement of August 19, 1872, so far in violation of section 2 of the act of 1851 as to render the contract illegal and void? In other words, is an agreement on the part of the county of Cook that it will join with the city of Chicago in erecting a building to be paid for as stated in the contract, in consideration of which the city should have the control and occupancy of the west half of the block for a city hall and public offices incidental to the government of said city without hindrance, henceforth forever, provided if used for other purposes the county should have the right to resume possession of the property and the contract thereupon become void, a selling, mortgaging, encumbering or conveying said block 39, or any part thereof, within the meaning of the prohibitory language of the act of 1851. However this question might be answered, it would seem too clear for argument that the decision of the court below must be reversed. If that contract is illegal and void because within the prohibition of the statute, then a court of equity will not lend its aid to the enforcement of it. If, on the other hand, by a fair construction of the contract it is not void as contravening the provisions of the statute, it is a complete defense, as appears from the allegations of this bill, to the action of ejectment.

We said in *Bishop of Chicago* v. *Chiniquy*, 74 Ill. 317 (on p. 318): "The indispensable basis upon which a defendant to an action at law may resort to a court of equity to restrain the prosecution of such action is, that he has some equitable defense which a court of law cannot take cognizance of, either by reason of want of jurisdiction or from the infirmity of legal process. The application to equity necessarily concedes the legal right, and it is upon the ground that such legal right which is sought to be enforced by the action at law is subservient to an equitable claim which the defendant at law cannot set up there, that the court takes jurisdiction, because it would be against conscience and good faith that the plaintiff at law should use the advantage of which he is thus possessed at law, when the legal right he is seeking to enforce is subservient to equities which the defendant at law is powerless to assert there. It is not upon the ground of want of legal right in the plaintiff at law that equity interferes, but upon the principle of preventing a legal right from being enforced in an inequitable manner or for an inequitable purpose. Equities calling for its interference, as clear as the legal right which it seeks to control, must be shown before a court of chancery should interfere with an action at law. These principles are recognized by all the authorities,"—citing Kerr on Injunction, pp. 13, 14, and cases in notes.

We entertain no doubt that, applying the rule here announced, (the soundness of which cannot be questioned,) the court below had no jurisdiction to enjoin the suit at law, and on that ground its decree should be held erroneous. It will accordingly be reversed, and the cause will be remanded to the circuit court of Cook county, with directions to dismiss the bill.

*Reversed and remanded.*