BERNARD M. BYRNE, CHARLES A. BYRNE AND ELLEN BYRNE, APPELLANTS, VS. CHARLES M. BROWN, APPELLEE.

1. Equity will not enjoin legal proceedings, including the action of ejectment, where the law court is competent to adjudicate, upon proper pleas in the legal action, the matters presented to the court of equity as a ground for injunction.
2. Where two courts have concurrent jurisdiction, the right to maintain it attaches to that court which first exercises it.

Appeal from the Circuit Court for Marion County.

*Statement.*

Bernard M. Byrne, appellants' father, died intestate in 1860, seized and possessed of about 15,000 acres of land lying in Levy, Marion, Hernando, Volusia and Nassau counties. The appellants were at that time minors, aged respectively nine, four and two years. In 1866, they with their mother Louisa A. Byrne, resided in Washington City, and they have not resided in this State since that time. At the Fall term, 1866, of the Circuit Court for Nassau county, in the Suwannee Circuit, Joseph Finnegan presented a petition alleging that he had been appointed administrator of the estate of said Bernard M. Byrne by the Judge of Probate of Nassau county; that the estate was indebted to petitioner in the sum of $4,910; that there was no personal property belonging to the intestate, and that it was necessary to sell the lands belonging to the estate lying in the counties aforesaid, and described in an exhibit to the petition, for the purpose of paying debts and expenses of administration. The petitioner prayed for an order to

sell the lands; that citation issue to Louisa A. Byrne, and that a guardian *ad litem* be appointed for appellants, then infants. The court directed citation to issue, and appointed one Henry Timannus guardian *ad litem* for appellants. Such proceedings were had upon answer of the guardian that on April 11, 1867, the court granted an order for the sale of so much of the decedent's lands as might be necessary to pay the indebtedness of the estate and costs of administration, and John C. McGhee and William H. Johnson were thereby appointed commissioners to make the sale after giving thirty days' public notice. The lands were all sold by the commissioners at a public sale in Nassau county, to Royal Boulter, Daniel Callahan and Harriet Young, and a report of the sale was confirmed in February, 1868. The administrator was discharged May 24, 1871. On May 25, 1875, the appellants, by Louisa A. Byrne their next friend, filed a bill in the Circuit Court of Nassau county (that county then being a part of the Fourth Judicial Circuit, as defined by the Constitution of 1868), against Joseph Finnegan, Royal Boulter, Daniel Callahan and Harriet Young, praying that the sale of said lands made as aforesaid be set aside and declared to be fraudulent and void; that Finnegan be held to account for all rents received from the lands since its sale and for timber cut thereon, and for the proceeds of timber sold therefrom, and that he be enjoined from offering for sale or selling any part of the land. Decrees *pro confesso* were entered against all the defendants, except Finnegan who answered maintaining the validity of the sale, insisting that the property was sold to pay a *bona fide* debt due him by the intestate with the full knowledge and consent of Louisa A. Byrne, and that before the court should decree restitution of the lands, even if the sale was invalid, it should require complainants to pay the

debt due defendant, with interest and all amounts expended by him for costs, taxes and other charges, expenses and disbursements in administering the estate, all of which were alleged to be a just and equitable lien on the lands. On February 29, 1876, the court, upon the bill and answer, "no objection being offered by counsel," decreed that the order made April 11, 1867, for the sale of lands in Hernando, Marion, Volusia, Levy and Nassau counties be and the same was opened and vacated and ordered cancelled; that the sale made in pursuance thereof be set aside and declared null and void; that defendant Finnegan be allowed his equitable lien upon all of said lands for the sum of $11,892.48, being the amount found by the court to be due defendant for his claim against the estate, for costs and expenditures as administrator, for taxes paid on the lands, and interest, and for reasonable compensation for his services in taking care of the lands; that the lands be sold at public sale to the highest bidder for cash on the first Monday in April, 1876, after being advertised for thirty days prior to such sale, by Marcellus A. Williams, who was thereby appointed special master to make such sale, before the court house door in the county of Nassau, in divisions to suit purchasers. It was further ordered that Finnegan receive from the proceeds the sum aforesaid, and that the remainder be paid to complainants or their attorneys. This sale was made April 3, 1876, and the particular tract now in controversy, N. E. 1-4 of S. E. 1-4, sec., 12 tp. 16 S., R., 18 E., in Marion County, was bid off by H. E. Alden for $400. The total amount of sales was $17,045.76, of which $4,760.80 was due from H. J. Baker (one of the attorneys for complainants in the suit) for 2,690.31 acres, and one-half interest in 398.80 acres of the land bid off in his name. On April 17, 1876, the court confirmed the sale, and directed that

conveyances be executed to the purchasers. The deed from the master to H. J. Baker purported to convey one-half interest in 398.80 acres, and besides other lands amounting in the aggregate to 2,690.31 acres, and was dated June 9, 1876. On November 18, 1876, H. J. Baker and wife conveyed to appellants and their mother, by quitclaim deed, for an expressed consideration of ten dollars, 1,919.14 acres of this land so deeded to him. The master executed a deed to John W. Lane, C. W. Snow and H. E. Alden for the land in controversy, and they entered into possession, and by subsequent conveyances from them and their grantees Catherine F. Brown became the owner of such title in 1887, and entered into possession of the land.

In 1888 appellants instituted an action of ejectment against Mrs. Brown and her husband to recover the land. On March 19, 1889, Mrs. Brown and her husband filed their bill in equity in the Circuit Court of Marion county alleging the proceedings had in the Circuit Court for Nassau county, the sales thereunder, the purchase of the land now in dispute by Alden and others, their subsequent conveyance thereof to Mrs. Brown, the pendency of the action of ejectment against her and her husband; and, further, that Mrs. Brown and her husband were then in the actual occupancy of the land in controversy; that the Finnegan lien was paid from the proceeds of sale made in 1876, and a large portion of the lands then sold, viz: 2,000 acres, was bid off at the sale for appellants by H. J. Baker and shortly afterwards conveyed to them by deed which was then of record in Marion county; that Charles Byrne was of full age in 1876, and that Bernard Byrne and Ellen Byrne attained their majority in 1877 and 1879; that thereafter, and until 1888, the appellants quietly acquiesced in the decree and sale, and continued to hold

title to lands under, and enjoy benefits of, the identical decree under which Mrs. Brown claimed title without objection, and in so doing ratified and confirmed the decree and sale, and estopped themselves from questioning the validity of Mrs. Brown's title derived therefrom; that Mrs. Brown and her predecessors had successively expended large sums of money in the purchase and improvement of the land in controversy, by reason whereof it had greatly enhanced in value and was then valued at not less than $25,000; that appellants' long continued silence after attaining their majority, attended with holding under, and continued enjoyment of, the benefits of the decree, inspired confidence and encouraged the purchase of said land by Mrs. Brown and the expenditure of large sums in development of the same, in view of which appellants were equitably estopped from attempting to avoid the decree and sale aforesaid; that though it was hoped that appellants would cease their vexatious attempts to claim said land, yet appellants pretended that the decree gave them no day in court after attaining their majority, and that said court could not by its decrees bind their inheritance, and that they could avoid the decree; that the appellants were before said Circuit Court of Nassau county in the attitude of complainants seeking relief from a previous sale of the same lands and for recovery thereof; that said court had jurisdiction of the subject-matter of the controversy and made the decree by consent of appellants' counsel for their benefit, and to relieve the lands from a lien or charge thereon, and perfect the title thereto; and that appellants by their unqualified acceptance and continued enjoyment of the benefits of such decree after they arrived at full age, ratified and confirmed same, and were estopped from questioning the validity of the decree as against Mrs. Brown, who was alleged to be a purchaser for value

without notice; that by reason of the institution of said action of ejectment, appellants had vexatiously, and without pretence of right, clouded and depreciated the value of Mrs. Brown's title to the land and caused her great annoyance and loss. The bill prayed that appellants and all persons claiming under them or acting by their authority be restrained and enjoined from further proceeding in the action of ejectment; that Mrs. Brown's title be confirmed and quieted, and that a perpetual injunction issue against appellants, and all persons claiming under them, restraining them from claiming or asserting or in any way attempting to assert title to the lands in controversy, and from litigating in any proceeding whatsoever or in any manner calling in question the validity of Mrs. Brown's title. Upon the filing of this bill the court below directed that an injunction issue as prayed until the further order of the court.

The appellants demurred to the bill for general want of equity, and this demurrer was overruled June 20, 1891. Subsequently the present appellee, having become the purchaser of the property in litigation, filed a supplemental bill showing this fact, and thereafter the cause proceeded in his name as complainant. Appellants filed their answer and testimony was taken by an examiner. At a hearing had upon the pleadings and testimony on January 30, 1894, it was decreed by the court that the equities were with appellee, and appellants were thereby perpetually enjoined and restrained from further proceeding in the suit of ejectment brought by them on August 11, 1888, against Catherine F. and Frederick H. Brown, or their assigns or grantees, for the recovery of the lands before described, and from claiming or asserting title to the land in controversy, or attempting so to do, and from litigating in any proceeding whatever, or calling in question the validity of ap-

Byrne v. Brown—Opinion of Court.

pellee's title to same; that the title of appellee to said land be thereby confirmed, and that he should have the quiet and peaceable possession thereof against the appellants and all persons claiming or to claim by, through or under them. From this decree the present appeal was entered.

*Walker & L'Engle,* for Appellants.

*No Appearance* for Appellee.

CARTER, J.:

The court below erred in overruling appellants' demurrer to the bill of complaint. If the sale under the decree of the Circuit Court of Nassau county was regular and valid as alleged in the bill of complaint, then the title of appellee derived therefrom was valid and legal and would have constituted a complete legal defense to the action of ejectment sought to be enjoined. If the sale was irregular or invalid, but the appellants by their conduct were estopped from asserting its irregularity or invaliditiy, that estoppel was available as a legal defense to the action of ejectment, under the plea of not guilty. Hagan v. Ellis, 39 Fla. 463, 22 South. Rep. 727. It is an universal rule that equity will not enjoin legal proceedings where the law court is competent to adjudicate, upon proper pleas in the legal action, the matters presented to the court of equity as a ground for injunction. Cohen v. L'Engle, 29 Fla. 579, 11 South. Rep. 47. See, also, same case 24 Fla. 542, 5 South. Rep. 235; Atkinson v. Allen, 17 C. C. A. 570, 71 Fed. Rep. 58; County of Cook v. City of Chicago, 158 Ill. 524, 42 N. E. Rep. 67. This principle applies to actions of ejectment as well as other common law actions. Stockton v. Williams, 1 Doug. (Mich.) 546; Bishop of Chicago v.

Chiniquy, 74 Ill. 317; Savage v. Allen, 54 N. Y. 458; Deweese v. Reinhard, 165 U. S. 386, 17 Sup. Ct. Rep. 340; Hawkinberry v. Snodgrass, 39 W. Va. 332, 19 S. E. Rep. 417; The Mountain Lake Park Association v. Shartzer,, 83 Md. 10, 34 Atl. Rep. 536; Holt v. Pickett, 111 Ala. 362, 20 South. Rep. 432. Two of these cases hold that if the matters alleged in the bill for injunction can be made available in the action of ejectment by equitable plea, the bill for injunction can not be maintained. It is unnecessary for us to assent to this proposition in the present case, as the matters alleged in this bill were available under the plea of not guilty in the ejectment suit. A court of law is ordinarily the proper tribunal to adjudicate the superiority of conflicting titles to land, wherein the parties may have the benefit of a jury trial. Equity, therefore, does not exercise jurisdiction in such matters, unless to adjudicate or protect equitable titles, or to enforce special equities. It may be conceded for the purposes of this case that equity had jurisdiction at the instance of appellee in possession, because of the inadequacy of his legal remedies. On the other hand, the law courts had jurisdiction at the instance of appellants out of possession, and equity would not have entertained a bill instituted by them. The law and equity courts, therefore, had concurrent jurisdiction, upon application of the proper parties, to adjudicate and determine the superiority of the conflicting titles. The appellants invoked the aid of the law court, and before these equitable proceedings were instituted that court had obtained jurisdiction of the subject-matter and the parties, and it would be a strange and an anomalous rule of law that would permit another court, though of concurrent jurisdiction, to withdraw the case and the parties from the jurisdiction of the law court, where the latter is as competent to extend the proper

relief as the former. The rule of law is that where two courts have concurrent jurisdiction the right to maintain it attaches to that court which first exercises it.

The final decree and the order granting injunction are reversed, and the case remanded with directions to sustain the demurrer to the bill, and for such further proceedings as may be consistent with equity and this opinion.