J. B. PEACOCK AND C. H. HARGRAVES, APPELLANTS, v. SUE D. FEASTER, W. D. BOBBITT AND LEWIS HORNE, K. W. HORNE AND J. B. NORMAN, JR., AS PARTNERS UNDER THE FIRM NAME OF L. HORNE & CO., APPELLEES.

| 52 | 565 |
| p52 | 563 |
| 52 | 565 |
| f53 | 1096 |

INJUNCTION—TO RESTRAIN PROCEEDINGS AT LAW—TO RESTRAIN JUDGMENT AT LAW—WHEN GRANTED.

1. Where a party goes into chancery after a trial at law he must be able to impeach the justice and equity of the verdict, and it must be upon grounds which either could not be made available to him at law, or which he was prevented from setting up by fraud, accident, or the wrongful act of the other party, without any negligence or other fault on his part.

2. A court of equity will not, on the application of the defendant in a judgment at law, who has had a fair opportunity to be heard upon a defense over which the court pronouncing the judgment had full jurisdiction, set aside the judgment or enjoin its enforcement simply on the ground that it was unjust, irregular or erroneous, or because the equity court would, in deciding the same case, have come to a different conclusion.

3. Equity will not relieve against a judgment at law on account of any ignorance, unskillfulness, or mistake of the party's attorney, unless caused by the opposite party, nor for counsel's negligence or inattention. The fault is in such cases attributed to the party himself. The neglect of an attorney to plead a valid and proper defense, or to attend the trial, either intentionally or through forgetfulness, furnishes no ground for relief against a judgment. Neither is it an adequate ground for relief in equity that the counsel neglected to assign errors, or to take any other requisite step on an appeal or writ of error in the case.

4. A court of equity will not entertain a party seeking relief against a judgment at law in consequence of his default upon grounds which might have been successfully taken in the law court, unless some reason founded in fraud, accident, surprise or some adventitious circumstances beyond the control of the party be shown why the defense at law was not made. To entitle a party to relief in equity against a judgment on account of the loss of his defense, it must be shown that it was occasioned by the fraud or fault of the adverse party, or by his own mistake, unmixed with any negligence or fault of himself, his counsel or agents.

5. Legal proceedings will not be enjoined in equity upon grounds of which a party may avail himself in defense of the action at law. A bill in equity cannot be maintained .to restrain by injunction the proceedings in another suit at law in the same or another court, between the same parties, where the relief sought may be obtained by a proper defense in such suit.

6. A judgment on the merits is an absolute bar to a subsequent action on the same claim, either in the same or any other forum, and concludes the parties and their privies, not only as to every matter which was offered and received to sustain or defeat the claim, but also as to any other admissible matter that might have been offered for either purpose. The admission by the pleadings of material facts does not constitute an exception to the rule.

This case was decided by the Court En Banc.

Appeal from the Circuit Court for Marion County.

### STATEMENT.

The appellants as complainants below filed the follow-

ing bill in equity in the Circuit Court of Marion county against the appellees as defendant below, to-wit: "J. B. Peacock & C. H. Hargraves, bring this their bill of complaint against Sue D. Feaster, W. D. Bobbitt, and Lewis Horne, K. W. Horne and J. B. Norman, Jr., as partners under the firm name of L. Horne & Co., of Marion county, Florida. And thereupon your orators complain and say: 1. That on the 28th day of October, A. D. 1897, one W. D. Bobbitt claimed to be seized and possessed of certain 520 acres of land situated in Marion county, Florida, a more particular description of which is found in exhibit 'A' hereto attached, which said land then and there contained virgin pine timber valuable for turpentine purposes, and while so. claiming to be seized and possessed of said land the said Bobbitt invited Lewis Horne, of the firm of L. Horne & Co. to purchase the turpentine privilege upon payment to him of the sum of $520, he the said Bobbitt and wife executed and delivered to J. B. Norman, Jr., K. W. & Lewis Horne a certain turpentine lease in words and figures indicated by said exhibit 'A,' which is hereto annexed and made a part hereof. That while said exhibit 'A' is drawn in the form of a lease, the full consideration therein mentioned, namely, the sum of $520.00, was paid by the lessees therein named upon the execution of same to the said Bobbitt, and the purpose and intention of said exhibit 'A' were to grant and convey to the said parties last named, or their assigns, the right to cut within a reasonable time turpentine boxes in said pine timber upon said land, and dip, chip and scrape such boxes as it is customary and usual in conducting the turpentine business, for a period of three years from the date such boxes were cut, and with the express understanding that such boxes would not be cut for several years, but by clerical

mistake same was drawn in the form of a lease, and no county and State was given in the description.

2. That thereafter, on the 6th day of December, 1897, the said Lewis Horne executed and delivered to the complainant, J. B. Peacock, a transfer of said lease, written upon said lease, in the words and figures indicated by exhibit 'B' hereto attached and made a part hereof; that the said J. B. Norman, Jr., K. W. Horne and Lewis Horne, were then and there conducting a naval stores business under the firm name of L. Horne & Company; and that the consideration paid to the said Bobbitt for the execution of the said exhibit 'A' was paid out of the funds of the said L. Horne & Company, and the said lease was acquired for partnership purposes; and that for the execution of such transfer the complainant J. B. Peacock paid a sum largely in excess of the sum of $520, which consideration so paid by the said Peacock was received by the said L. Horne, K. W. Horne and J. B. Norman, Jr., and went into their partnership assets, and that the purpose of such transfer was to vest in the said J. B. Peacock the leasehold interest, or the privilege granted, by and under the terms of the said exhibit 'A.'

3. That thereafter on the 22nd day of February, 1899, the complainant, J. B. Peacock, for a valuable consideration executed and delivered to one J. Peele and J. I. Hines, a deed whereby he conveyed to the parties last named, among other things, an undivided two-thirds interest in the said lease referred to in this bill as exhibit 'A.' which said lease was further identified in said deed by reference to the book and page of the public records of Marion county, Florida, where the same was recorded. That the purpose of this deed executed on the part of the said J. B. Peacock was to vest in the said Peele and Hines

an undivided two-thirds interest in the privilege granted, or 'the leasehold estate, given by the terms of the said exhibit 'A,' copy of which said deed last mentioned is hereto annexed marked exhibit 'C' and made a part hereof.

4. That thereafter, on the 7th day of April, 1899, the complainant, J. B. Peacock and his wife, and J. Peele and his wife, and J. I. Hines and his wife, executed and delivered to the complainants, as copartners under the firm name of Peacock & Hargraves, a deed wherein they conveyed to the complainants, among other things, all the rights, leasehold or otherwise, in certain leases therein referred to, one of which leases was described therein as: 'One lease from W. B. Babbitt and wife to J. B. Norman, Jr., K. W. and Lewis Horne, of date October 28th, 1897, recorded in book 99, page 520, of the public records of Marion county, Florida, November 11th, 1897, and transferred by said Horne & Company to J. B. Peacock December 6th, 1897,' by which it was intended to grant and convey to your orators the rights and privileges mentioned in said exhibit 'A,' and the reference to said lease here quoted was intended to be a reference to said lease executed by the said W. D. Bobbitt and wife, but through a clerical mistake the name and initials of the said lessor in said exhibit 'A,' were incorrectly given in said deed last mentioned, a copy of which said deed is hereto annexed marked exhibit 'D' and made a part hereof. That the purpose of the execution of said deed by the said Peacock, Peele & Hines, and their wives, was to vest in each of your orators as copartners under the firm name of Peacock and Hargraves, an undivided one-half interest in all of the property then belonging to the said Peacock, Peele & Hines, then doing business under the firm name of Pea-

cock, Peele & Company, and that your orators paid a large consideration for the execution of said deed, which consideration included a sum largely in excess of $520, which was allowed to and paid to the said Peele and Hines upon their retirement from the said firm upon the execution of said deed.

5. That thereafter, on the 7th day of March, 1900, the said W. D. Bobbitt and wife, for and in consideration of the sum of five dollars, executed and delivered to one John L. Feaster a quit claim deed to the said land described in exhibit 'A,' a copy of which quit claim deed is hereto annexed, marked exhibit 'E.' And thereafter, about December, 1901, the said Feaster entered upon said lands, and began to fell the timber thereon for milling purposes, before any part of it had been boxed, and thereupon your orator applied for and obtained an injunction to prevent the said Feaster from felling said timber in violation of your orators' rights, as the holders of the rights and privileges granted by the said Bobbitt under said exhibit 'A,' and thereafter during the early winter or spring of 1902, and within a reasonable time from the date of said exhibit 'A,' your orators entered upon the lands described in said exhibit 'A,' and boxed a portion of same for turpentine purposes, and continued to so use and enjoy the same, and continued in possession of said lands, as the assignees of the rights acquired under said exhibit 'A,' until some time in the month of January, 1903, at which time your orator, C. H. Hargraves, for a valuable consideration paid him, executed and delivered to your orator, J. B. Peacock, a deed conveying an undivided half interest in all the property of the said firm of Peacock and Hargraves, and that among other things mentioned in said deed is: 'One lease from W. D. Bobbet and wife to J. B. Norman, Jr., K. W.

Horne and Lewis Horne,' which lease is further identified by reference to the fact that same was transferred by Horne & Company to J. B. Peacock, and by reference to the page and book of the public records where same is found of record, which was intended to convey and describe all interest held by your orators, Hargraves, under said exhibit 'A.' That your orator, Hargraves, only had an undivided one-half interest in the property of the said firm of Peacock and Hargraves, and that the deed executed by him in January, 1903, to the complainant, was intended to convey to the said Peacock all of the interest of the said Hargraves in the property of said firm. That no part of said timber had ever been boxed prior to the winter of 1901 and 1902.

6. That your orators were unsuccessful in said suit brought to procure an injunction against the said Feaster to prohibit him from felling the said timber, and the said injunction so obtained by them was thereafter dissolved, but that neither the said J. L. Feaster, nor his legal representatives, obtained any affirmative relief in said injunction suit, and it was not therein decided or held that your orators had no right under said exhibit 'A,' to continue working the timber upon said lands (a copy of the final decree in said injunction suit is hereto attached and made a part hereof marked exhibit 'F,') but after said decree was pronounced dissolving the injunction so obtained by your orators, one Dickson H. Irvine, as administrator of the estate of said John L. Feaster, the latter having died intestate on the 27th of November, 1902, and the former having been appointed and qualified as such administrator in the County Judge's Court of Marion county, Florida, instituted a suit upon a certain injunction bond executed by your orators and filed at the time the injunction above

described was procured, which suit was instituted by the said administrator against your orators in the Circuit Court of the Fifth Judicial Circuit of the State of Florida, in and for Marion county, which cause was thereafter in due form, by consent of the parties, referred to one Richard McConathy as referee, under the laws of Florida, to make findings and pronounce judgment in said suit so instituted by said administrator upon the said injunction bond; and thereafter the said referee, upon the taking of proofs, made finding, among other things, as follows:

That the said plaintiff, administrator, was entitled to recover the sum of $250, for damages occasioned to the said Feaster by reason of the fact that the said injunction prevented the said Feaster from getting sufficient timber to operate his sawmill, and that the said administrator was entitled to recover the further sum of $260, for damages occasioned by the boxing of said timber; and that the said administrator was entitled to recover the further sum of $350, attorney's fees, from which findings he further found that the total damages which the plaintiff was entitled to recover was the sum of $860, for the items above mentioned, but on account of the fact that the said injunction bond was only for the sum of $500, the said referee, on the 3rd of July 1905, entered judgment for said sum last mentioned, together with $91.11 costs, which judgment was in due form, and was against your orators and their sureties upon said bond; and thereafter execution issued upon said judgment so entered by the said referee, and your orators were obliged to pay the same, together with interest and costs thereon, but paid same under protest.

7. That on the 12th day of November, 1904, the said Irvine as Administrator aforesaid, instituted in the Circuit

Court of the Fifth Judicial Circuit of Florida, in and for Marion County, a suit in trover against your orators, wherein he seeks to recover for the value of 5,000 gallons of spirits of turpentine of the value of $2,000, and 500 barrels of rosin, of the value of $1,000, alleged to have been converted by these defendants between the 25th day of December, 1901, and the 27th day of November, 1902, and that the said cause is still pending in said court, and has never reached a trial.

8. That on the 12th day of November, 1904, the defendant Sue D. Feaster, as the widow and sole heir of said John L. Feaster, instituted a suit in trover in the court last mentioned against your orators for a quantity of rosin and turpentine similar to that specified in the declaration of the said administrator, and thereafter, in May, 1905, the said suit in trover so instituted by the said Sue D. Feaster in the Circuit Court of Marion county, Florida, came on for trial, and on the 22nd day of May, 1905, at the trial of said cause, a jury assessed the damages of said Sue D. Feaster in said trover suit at $2,800, with interest at the rate of eight per cent amounting to $256.92. And thereupon, on the 30th day of said month, judgment was entered upon said verdict against your orators in said cause for the sum of $3,056.92, and $40 costs, as appears in minutes of Court Book 'N,' at page 405. That from the judgment aforesaid your orators sued out an appeal to the Supreme Court of Florida, and that thereafter, on the 30th day of January, 1905, the said judgment was affirmed by the said Supreme Court, and that said Sue D. Feaster is threatening to enforce the same by levy upon the property of your orators; that the only claim of title to such turpentine and rosin which said Sue D. Feaster had was as heir of John L. Feaster,

whose only claim of title was under said quit-claim deed.

9. That the said boxing referred to in the findings of said McConathy, referee, for which he assesses $260 damages against your orators, refers to the said timber which your orators hindered the said Feaster from cutting, for which the said referee assesses damages in the sum of $250, refers to the pine timber situated upon the lands described in exhibit 'A,' and none other; and that the judgment for $3,056.92, recovered by the said Sue D. Feaster as aforesaid, is the gross value, as estimated by the jury, of the dip and scrape taken from said lands under said lease between the 27th day of November, 1902, and March, 1904, from which dip and scrape spirits of turpentine and rosin are manufactured, and that the said dip and scrape for which said recovery was so had by the said Sue D. Feaster, is the dip and scrape taken by your orators, and your orator Peacock, under the terms of said exhibit 'A,' from the lands described in said exhibit, and none other, and that all such dip and scrape were taken within the term limit of three years from the date of boxing the pine timber upon said lands, and within the terms and provisions of said exhibit 'A,' as fairly and necessarily understood and intended by the parties thereto, that said entry and boxing mentioned in the findings of the said referee, though not mentioned in said lease were necessarily authorized by said lease.

10. That at the time of the purchase by the said J. L. Feaster of the land described in exhibit 'A,' and at the time of the execution and delivery to the said Feaster of said quit claim deed, the said Feaster was fully advised and informed of the existence of said exhibit 'A,' and it was then and there understood and agreed between the

said Feaster and the said Bobbitt that the said Feaster should recognize the rights of the holders of said lease to exercise the privilege therein granted, in order to relieve the said Bobbitt from responsibility upon the covenants contained in said lease.

11. That the said W. D. Bobbitt is insolvent, and unable to respond in damages to your orators if sued upon the covenants contained in the said exhibit 'A.'

12. That your orators do not know the true consideration paid by said Feaster to said Bobbitt for the execution of said quit-claim, but charges the truth to be that in fixing such price both said Feaster and said Bobbitt took into consideration that said lands were subject to the turpentine lease marked exhibit 'A,' and both knew that your orators were the holders of said lease and recognized your orators' right to box and work said timber under said lease, and thereafter the said Feaster endeavored to get your orators to agree to begin the boxing of said timber in the fall of 1901 under said lease so that it would be sooner free from said turpentine privilege, as he, Feaster, was anxious to cut same for mill purposes, but being unable to get such promise from your orators said Feaster began in December, 1902, to cut a part of said timber for mill purposes, which was the cause of the injunction suit instituted by your orators as aforesaid; and thereafter when your orators did begin boxing said timber the said Feaster informed your orators' agent that he, Feaster, did not intend to interfere further with your orators in the use of said timber under said lease, upon which information your orators relied and began working such boxes, and had employed in that behalf a large number of laborers, and continued to use same and other boxes cut by

them in other parts of said land in the winter of 1902, and 1903, until long after the death of said Feaster; that said J. L. Feaster lived in the vicinity of said lands, and had abundant opportunity to see your orators' laborers engaged daily in said work and knew that said timber was being worked by your orators, but said Feaster at no time made any protest or objection from the time the first boxes were cut until his death, but that said D. H. Irvine, as administrator aforesaid, and said Sue D. Feaster conspiring together to wrong your orators under the forms of law have instituted and prosecuted the suits aforesaid, which according to the strict rules of a court of law your orators were not permitted to and could not defend by showing the matters herein stated. That said Feaster left a large estate, and your orators are advised that all claims against his estate have been paid or satisfied by compromise at less than their face value, that any claim that said Bobbitt might now present against said estate is now barred by statute. That unless restrained by order of this court, the defendant will cause the execution issued upon said judgment for $3,056.92 and $40.00 cost to be levied upon the property of your orators.

13. That in March, 1904, long before the expiration of the term specified in said exhibit 'A,' the said Sue D. Feaster, without the consent of your orators, or either of them, took possession of the lands and timber described in said exhibit 'A,' and notwithstanding the fact that your orators were in equity in good conscience the owners of the privilege granted by and under the terms of said exhibit 'A,' yet by reason of the facts aforesaid, and by reason of the fact that the attempted transfer or conveyances of the estate or interest granted or extended by or under the terms of said exhibit 'A,' have not been executed in the

form required by law, yet are valid and sufficient in equity.

14. For as much as your orators are without relief save in a court of equity, and the premises considered, your orators pray that the said Sue D. Feaster may be temporarily restrained from enforcing or attempting to enforce the payment of said judgment of date 30th of May, 1905, recovered by her in the Circuit Court of Marion county, Florida, against your orators for the sum of $3,056.92 and $40 costs, or the debt therein and thereby adjudicated, which said judgment is found of record in the records of said court in Minutes of Court Book ('N' at page 405); and that the true purpose and meaning of said exhibits 'A,' 'B,' 'C,' and 'D,' may be given effect, and upon the coming in of the proofs in this cause that such injunction be made perpetual; that a special master be appointed to take the proofs in this cause; that your orators may have such other and further relief as equity may require and unto the court may seem meet; that the defendant be required to answer this your orators' bill, but not under oath, answer under oath being expressly waived; that subpoenas in chancery may issue out of this court directed to the defendant Sue D. Feaster, W. D. Bobbitt and Lewis Horne, K. W. Horne and J. B. Norman, Jr., as partners under the firm name of L. Horne & Co., requiring them under a penalty therein named to answer this your orators' bill on Monday the 2nd day of April, A. D. 1906, and your orators will ever pray, etc."

Upon this bill the complainants made application to the Circuit Judge for a temporary injunction, upon which application the following order or decree was made: "It is ordered, adjudged and decreed that the application for said injunction or temporary restraining order as prayed in said bill be denied, the court being of the opinion that

37—S. C.

the complainants have not properly excused their failure to properly prosecute the former chancery suit in which injunction was obtained, which former chancery suit is referred to in the bill in this cause, and the court being also of the opinion that the complainants, if they have any equitable defence, have too long neglected the presentation of same."

From this decree the complainants below have appealed to this court, assigning the said order or decree as error.

*William Hocker,* for Appellants.

*R. L. Anderson* and *R. A. Burford,* for Appellees.

TAYLOR, J. (*after stating the facts*) : The following principles of law are involved in this case and are well settled by the authorities: Where a party goes into chancery after a trial at law he must be able to impeach the justice and equity of the verdict, and it must be upon grounds which either could not be made available to him at law, or which he was prevented from setting up by fraud, accident, or the wrongful act of the other party, without any negligence or other fault on his part.

A court of equity will not, on the application of the defendant in a judgment at law, who has had a fair opportunity to be heard upon a defense over which the court pronouncing the judgment had full jurisdiction, set aside the judgment or enjoin its enforcement simply on the ground that it was unjust, irregular, or erroneous, or because the equity court would, in deciding the same case, have come to a different conclusion.

Equity will not relieve against a judgment at law on account of any ignorance, unskillfulness, or mistake of

the party's attorney, unless caused by the opposite party, nor for counsel's negligence or inattention. The fault is in such cases attributed to the party himself. The neglect of an attorney to plead a valid and proper defense, or to attend the trial, either intentionally or through forgetfulness, furnishes no ground for relief against a judgment. Neither is it an adequate ground for relief in equity that the counsel neglected to assign errors, or to take any other requisite step on an appeal or writ of error in the case.

A court of equity will not entertain a party seeking relief against a judgment at law in consequence of his default upon grounds which might have been successfully taken in the law court, unless some reason founded in fraud, accident, surprise, or some adventitious circumstances beyond the control of the party be shown why the defense at law was not made. To entitle a party to relief in equity against a judgment on account of the loss of his defense, it must be shown that it was occasioned by the fraud or fault of the adverse party, or by his own mistake, unmixed with any negligence or fault of himself, his counsel or agents. 1 Black on Judgments (2d ed.) Secs. 366 to 387 and authorities there cited.

Legal proceedings will not be enjoined in equity upon grounds of which a party may avail himself in defence of the action at law. 1 Spelling on Injunctions & Extra. Rem. (2d ed.) Sec. 42 and citations; Lebanon Mut. Ins. Co.'s Appeal (Pa.) 1 Atl. Rep. 559. A bill in equity cannot be maintained to restrain by injunction the proceedings in another suit at law in the same or another court, between the same parties, where the relief sought may be obtained by a proper defence in such suit. Savage v. Allen, 54 N. Y. 458; Cohen v. L'Engle, 24 Fla. 542, 5 South. Rep.

235. A judgment on the merits is an absolute bar to a subsequent action on the same claim, either in the same or any other forum; and concludes the parties and their privies, not only as to every matter which was offered and received to sustain or defeat the claim, but also as to any other admissible matter that might have been offered for either purpose. The admission by the pleadings of material facts does not constitute an exception to the rule. Sauls v. Freeman, 24 Fla. 209, 4 South. Rep. 525; Cohen v. State Bank of Florida, 29 Fla. 579, 11 South. Rep. 47; Byrne v. Brown, 40 Fla. 109, 23 South. Rep. 877; Dibble v. Truluck, 12 Fla. 185; Gamble v. Campbell, 6 Fla. 347; Thornton v. Campbell's Exr., 6 Fla. 546. Applying these well settled principles to the case made by the bill herein the court below made the proper order denying the injunction prayed. According to the statements of the bill the appellant had a complete defence to all of the actions at law of which he complains, which if properly pleaded and urged in such actions should have defeated the recoveries complained of. No sufficient reason is disclosed by the bill as to why such defences were not interposed and pressed to a successful termination, that would authorize a court of equity to interfere by injunction. The fact that one of the instruments under which the complainant claims designated another instrument forming a part of his chain of title in part by a misspelling of the name of the grantor therein does not furnish any excuse for not presenting and urging such instrument in defense of the suit at law, since such misspelling of the name was immaterial under the rule of *idem sonans,* and the instrument intended to be transferred was otherwise clearly and definitely designated. The land also was accurately described by its proper section, township and range numbers, and it was,

therefore, unnecessary besides to give the name of the county in which they were located.

The decree appealed from is affirmed at the cost of the appellants.

SHACKLEFORD, C. J., and COCKRELL, WHITFIELD and PARKHILL, JJ., concur.

HOCKER, J., disqualified.