278    APPELLATE COURTS OF ILLINOIS.

Erie & Mich. Ry. & N. Co. v. Cen. Ry. E. Co., 152 Ill. App. 278.

## Erie & Michigan Railway & Navigation Company, Appellee, v. Central Railway Equipment Company, Appellant.

### Gen. No. 15,725.

1. CORPORATIONS—*when foreign cannot maintain action in this state.* A contract made in this state by a corporation, without having complied with the laws of this state as to foreign corporations doing business in this state, cannot be sued on in this state, even though after the making of such contract and before the institution of suit thereon or with respect thereto such corporation has complied with such laws.

2. CORPORATIONS—*when foreign cannot maintain action in this state.* A foreign corporation authorized to transact business in this state at the time it institutes its action cannot maintain an action for an injunction to prevent the prosecution of a suit at law upon the ground that it is predicated upon a contract obtained by fraud, if such contract was made by such corporation in this state at a time when it had no power to make such a contract or to sue in this state.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed December 23, 1909.

**Statement by the Court.** This is an appeal from an interlocutory order of the Circuit Court enjoining appellant from prosecuting an action brought by it against the appellee in the Municipal Court of Chicago until the further action of the court.

The suit in the Municipal Court, the further prosecution of which is enjoined, was brought to collect rent alleged to be due under a written proposition dated December 22, 1906, made by appellee to the appellant, then known as the Sipp Railway Equipment Co., and accepted by the latter in writing. By the terms of this instrument the appellant agreed to lease to appellee for a period of five years 300 box cars conforming to certain conditions therein described. As rental for such cars appellee agreed to pay an amount specified in the agreement at certain fixed times; and further

agreed to redeliver the cars to appellant at the end of the period of the lease free of all expense. There are other provisions in the instrument, not material to the consideration of the questions now in controversy. The performance of the lease is guaranteed by the United States Gypsum Company, a New Jersey corporation authorized to do business in the States of Illinois and Michigan.

The bill of complaint under which the injunction in question was issued alleges that complainant, appellee herein, is a Michigan corporation, authorized to do business in Illinois. It appears however from affidavits offered and read by appellant at the hearing in the Circuit Court, and is apparently not disputed, that prior to and at the time of the execution of the said lease, appellee was a foreign corporation for profit, not licensed to do business in Illinois; that it was not an insurance company nor a building and loan company nor a surety company; that it was organized and existing under the laws of the State of Michigan; that it had never acquired, constructed nor operated a railroad in the State of Illinois; "that during the time of all the transactions and occurrences covered by and mentioned in said bill of complaint, said complainant was exercising corporate powers and transacting business, not interstate commerce, in the State of Illinois; that from and after July 1, 1905, to the present time said complainant has constantly maintained its general and principal offices in Illinois and in the city of Chicago;" that during the time of the transactions in controversy appellee maintained its bank accounts in Illinois, which were three in number, consisting of a pay roll account, a dividend account and a general account; and that it had no other bank account in any bank outside of Illinois. The affidavit sets out at considerable length a number of business transactions of appellee in the State of Illinois tending to show that while still a foreign corporation which had not qualified to transact business in Illinois nor to exercise any corporate powers in the state, and which had not com-

280    APPELLATE COURTS OF ILLINOIS.

Erie & Mich. Ry. & N. Co. v. Cen. Ry. E. Co., 152 Ill. App. 278.

plied with an "Act to regulate the admission of foreign corporations for profit to do business in the State of Illinois," in force July 1, 1905, appellee had carried on extensive business transactions in the state, involving the continued exercise of corporate powers; and further that prior to October 2, 1908, appellee had never made the application to the Secretary of State of Illinois provided for in section 2 of said Act, and the Secretary of State had never issued any certificate authorizing said corporation to transact any business in this state. Appellee was licensed to transact business in Illinois on the 14th of January, 1909. The bill of complaint was filed March 9, 1909.

Material allegations of the bill setting up equities upon which appellee relies, are to the effect that appellee, complainant herein, is and for some years has been owning and operating a railroad from East Tawas to Alabaster, both in Michigan, freight steamers upon the Great Lakes and docks in Alabaster; that O. B. Englisch at the time of the transactions in question and until January 16, 1909, was a director of complainant and was until October 2, 1908, complainant's vice-president and general manager, from which offices he was removed on the dates mentioned; that as vice-president and general manager of complainant he had, subject to the supervision of the directors, the management and control of complainant's business, and that from complainant's incorporation until October 2, 1908, he controlled its corporate acts; that as such officer and director it was not in his power to make any contracts in which he had or could have any personal interest except as a stockholder; that in 1906 it was necessary for complainant to secure for use in its business a large number of box freight cars, and Englisch as such officer and subject to the approval of complainant's directors was charged with procuring such cars upon the most favorable terms possible; that one B. F. Sipp, a dealer or broker in railway equipment, having learned that the Illinois Central Railroad Company, an Illinois corporation, had box freight cars for sale, un-

dertook for his own profit to find a purchaser therefor; that he proposed to Englisch as complainant's vice-president and general manager, that complainant buy said cars for substantially $150 a car, and that thereupon Englisch formed the fraudulent design of buying the cars without complainant's knowledge and leasing them to complainant at a price which would secure him a great profit at complainant's expense; that he informed Sipp that either complainant or he for complainant's benefit would purchase the cars, but for complainant's convenience would cause the title to said cars to be held by an independent corporation for complainant's benefit; that he proposed to Sipp that such corporation should be organized under the name of the Sipp Railway Equipment Company, and that Sipp be paid a commission for procuring the sale of the cars in stock of said proposed corporation, and that Sipp accepted this proposition.

It is alleged that about this time, December 22, 1906, said Englisch reported to complainant that he could lease for complainant from the Sipp Railway Equipment Company, which he represented to be an Illinois corporation, 300 box cars of a capacity of 50,000 pounds each, upon advantageous terms for complainant and that it would cost complainant between $200,000 and $400,000 to buy a like number of cars; that believing such representations complainant requested Englisch to procure the cars; that the cars so represented to belong to the Sipp Railway Equipment Company were in fact the cars of the Illinois Central Railroad Company, and that there was at that time no such firm, association or corporation as the Sipp Railway Equipment Company in existence, but the name was used to cause complainant to believe it was entering into a valid contract with an existing corporation by a pretended lease, which was however a mere device to enable Englisch to profit at complainant's expense.

Upon December 22, 1906, the alleged pretended lease was executed in complainant's name "By O. B. Englisch, Vice President & Genl. Mgr.;" and below such

282    APPELLATE COURTS OF ILLINOIS.

Erie & Mich. Ry. & N. Co. v. Cen. Ry. E. Co., 152 Ill. App. 278.

signature was an endorsement, "Accepted, Sipp Railway Equipment Co. by B. F. Sipp, President."

It is further alleged that Englisch while still an officer and agent of complainant authorized Sipp to purchase said 300 cars from the Illinois Central Railroad Co., for $150 per car, the seller to expend not to exceed $25 a car in repairs on each car, and Sipp made such an agreement in his own name; but it is charged, for and on behalf of complainant. It is alleged on information and belief that Englisch furnished the money to purchase the cars and paid the Illinois Central Railroad Co. $45,000 for the cars and $14,122.67 for repairs on them, and that all of these acts of Englisch and of Sipp in connection therewith were in fact and law done by them as agents of complainant.

As a further part of his scheme to defraud complainant, it is charged that after the execution of said pretended lease Englisch caused a corporation to be formed under the laws of Illinois, with the name "Sipp Railway Equipment Company," having a capital stock of $5,000, which was in January, 1907, increased to $200,000, all of which stock, it is charged on information and belief, Englisch owned or controlled, except a small percentage issued to Sipp as commissions for the purchase of the cars; that Englisch controlled and has always controlled said corporation; that in September, 1907, Sipp severed his connection with and surrendered his interest in said Sipp Railway Equipment Company, and the name was changed to the Central Railway Equipment Company.

It is charged that said last named corporation, the appellant herein, while ostensibly organized to manufacture and deal in railway equipment and supplies, was in reality organized as one step in a scheme to defraud complainant, and that by placing the apparent ownership of said cars in said corporation Englisch was enabled to and did conceal from complainant his personal interest in said Equipment Company which claimed to be the owner of said cars, and that said pretended lease was in reality a lease between Englisch

and complainant; that thereby Englisch has been enabled to receive as pretended rental for the cars, a sum out of all proportion to their value, which sum had up to August 1, 1908, amounted to upwards of $48,900, although the cars cost but $59,000, and that all the dealings of Englisch as an officer and agent of appellee with said Sipp corporation amounted in law and fact to dealings with himself as an individual and were frauds upon complainant; that all of said acts in procuring said cars should be decreed to be for the benefit of complainant; that the pretended lease should be declared void and Englisch should be required to account to complainant for all moneys and property received by him or said corporation formed by him.

The bill further details circumstances relating to the delivery of the cars, their capacity and condition, and shows that Englisch caused complainant to pay the rentals under the pretended lease until September, 1908, when complainant refused to make further payments, having learned for the first time the true state of facts relating to the transactions in controversy; that thereupon notice was served upon the appellant that said lease was procured by fraud and that appellee would pay no further rent for said cars; but complainant offered to pay the difference between the rentals already paid and the purchase price of the cars as paid to the Illinois Central Railroad Company. October 2, 1908, Englisch was removed from the office of vice-president and general manager of appellee, and on January 16, 1909, from the office of director.

It is alleged that at the time of the purchase of the cars, Englisch represented to said Illinois Central Railroad Company that the cars were purchased for complainant; that at the time of the execution of the alleged lease by Englisch, he was second vice-president of the said United States Gypsum Company, and that by his representations to both complainant and said Gypsum Company he procured the latter to guarantee the performance of the lease.

It is further shown that since complainant's refusal

284    APPELLATE COURTS OF ILLINOIS.

Erie & Mich. Ry. & N. Co. v. Cen. Ry. E. Co., 152 Ill. App. 278.

to pay any more rent under the pretended lease, the appellant, for the purpose of enforcing said alleged fraudulent contract, has caused an action at law to be instituted in the Municipal Court of Chicago against appellee, and an action also against the United States Gypsum Company upon its said guaranty; that demurrers to pleas of the defendants in said suits have been sustained, and that it will be impossible for said defendants to obtain adequate relief in the premises in said Municipal Court or in any court of law.

Affidavits in behalf of appellee tending to support the averments of the bill and other affidavits in behalf of appellant tending to show that appellee at the time of the transactions in controversy was a foreign corporation, without authority to do business in this state, were read upon the hearing.

Before the injunction issued the complainant dismissed the bill as to Englisch.

ISRAEL SHRIMSKI, for appellant.

SCOTT, BANCROFT & STEPHENS, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is said in behalf of appellant that having been dismissed as to the defendant O. B. Englisch, the bill is fatally defective; that it is apparent that he is an indispensable party. Appellee states that "Englisch was dismissed as a party because the lower court announced and the Equipment Company had claimed that the attempt to obtain relief against Englisch proved the action was not merely defensive, but was an affirmative proceeding for an accounting;" that the remedy sought by appellee "is an injunction against a suit upon a contract, the execution of which by it was procured by fraud," and that "the only thing it was granted by the lower court and which is the only question for determination here is the right to avail itself of an equitable defense against a claim based solely

upon the fraudulent contract.'' The interlocutory decree appealed from merely restrains appellant from further prosecuting its action against appellee in the Municipal Court. We regard the bill as sufficient on its face to this extent.

Appellant's main contentions are that at the time of the transactions out of which appellee's claim to relief arises, the latter was a foreign corporation transacting business and exercising corporate powers in this state in violation of law, without having complied with the requirements of the Act of 1905, regulating ''the admission of foreign corporations for profit to do business in the State of Illinois;'' that it cannot therefore maintain this suit nor any suit upon any cause of action arising out of such transactions; that it could not at that time enter into any valid contract in this state, and that neither directly nor as an alleged *cestui que trust* can it take any benefit flowing from contracts which it was incapable of making. A further contention is that no equity appears in the bill.

It is not questioned that as a matter of fact the lease in controversy was executed and all the transactions relating thereto set forth in the bill occurred at a time when appellee, a foreign corporation for profit, organized and existing under the laws of Michigan, had not complied with the requirements of the said Act of 1905 regulating the admission of foreign corporations to do business in Illinois. The first section of that Act (R. S., chap. 32, sec. 67b) provides that before any such ''foreign corporation for profit shall be permitted or allowed to transact any business or exercise any of its corporate powers in the State of Illinois,'' such corporation ''shall be required to comply with the provisions of this Act and shall be subject to all of the regulations prescribed herein, as well as all other regulations, limitations and restrictions applying to corporations of like character organized under the laws of this state.'' The sixth section of the Act provides certain penalties for failure to comply therewith and that ''in addition to such penalty, if after this Act shall take

286 APPELLATE COURTS OF ILLINOIS.

Erie & Mich. Ry. & N. Co. v. Cen. Ry. E. Co., 152 Ill. App. 278.

effect, any foreign corporation shall fail to comply herewith, no suit may be maintained either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort in any court in this state.'' In United Lead Co. v. Reedy Elevator Manf'g Co., 222 Ill. 199-201, a provision of a statute then in force (R. S. 1903, chap. 32, sections 67b and 67d) similar to that from the Act of 1905 last above quoted was under consideration. The court said: ''The contract upon which this suit was brought having been entered into in this state when appellant was not permitted to transact business in this state, is in violation of the plain provisions of the statute, and is therefore null and void, and no action can be maintained thereon at any time even if the corporation should at some time after the making of the contract qualify itself to transact business in this state by a compliance with our laws in reference to foreign corporations that desire to engage in business here.'' So in the case at bar, the fact that appellee has, since the transactions now in question, complied with the requirements of the Act of 1905 and been licensed to transact business in Illinois does not relieve it from the prohibition of the statute, so as to enable it to maintain at any time any action upon any contracts which it entered into in this state prior to January 14, 1909, the date when it was licensed. All such contracts, including the lease in controversy, are, in the language of the Supreme Court, null and void.

In so far as the bill by its averments and its prayer seeks affirmative relief other than that granted by the injunction (which merely restrains the prosecution of a suit upon the lease in the Municipal Court), it is difficult to see upon what ground it can be maintained. It prays for an injunction not only restraining appellant from prosecuting the suit at law, but also from selling, transferring, encumbering or disposing of the cars mentioned in the lease and from interfering with appellee's possession or use of the cars pending an accounting by the court and its determination of the real

ownership of the cars. In appellee's brief it is said that "appellee's ownership need not be adjudicated" at this time, that the "contention therefore is not solely or necessarily, did the appellee become the owner, but is primarily, is it not sufficient to show that appellant is not the owner. Unless this is answered in the negative, the other question is not material." It is clear therefore that appellee seeks by its bill to maintain an equitable claim for affirmative relief upon transactions which by the statute were forbidden to it as a foreign corporation not licensed to do business in the state at the time, and which transactions were and are therefore to be deemed null and void. It asks the court to determine the question of ownership of the cars and having done this then to grant affirmative relief by injunction. The statute forbids to appellee the maintenance of such a suit.

It is urged however that the foreign corporation Act does not prevent a corporation from defending in the courts of this state; that the scope of the injunction "goes no further than a mere defense of the pending action in the Municipal Court," that it is the injunction order and "not the prayer of the bill that is hereby reviewed," that such order "merely held that a bill could be maintained in so far as it set up in chancery facts to defeat an action at law which must otherwise succeed;" that "the question for this court to consider is whether or not the legislature intended to bar foreign corporations from defending in this state, and second, whether if that defense is equitable, the legislature intended by the use of the words 'maintaining a suit upon any claim legal or equitable,' to include a suit wherein the sole relief consisted in enjoining a pending law action in which the corporation had already been made a party, for the purpose of setting up an equitable defense to that action and preventing a judgment being entered therein." The intention of the legislature is to be determined from the Act itself. In United Lead Co. v. Reedy Elevator Mfg. Co. *supra* the language of the court in Cincinnati v. Rosen-

thal, 55 Ill. 85, is approved as follows: "When the legislature prohibits an act or declares that it shall be unlawful to perform it, every rule of interpretation must say that the legislature intended to interpose its power to prevent the act, and as one of the means of its prevention that the courts shall hold it void. This is as manifest as if the statute had declared that it should be void." It is true that the language of the Act does not in terms prohibit a foreign corporation from defending a suit brought against it, but only from maintaining such suit. We are however unable to concur in appellee's contention that the question for us to consider is "whether or not the legislature intended to bar foreign corporations from defending in this state." The question is whether appellee, a foreign corporation now authorized to transact business in this state and to sue and defend in its courts, can maintain a suit for relief from the consequences of a contract made in this state which it had then no power to make and upon which it had not then and has not now the right to maintain any suit "either at law or in equity."

Appellee's counsel urge that "a foreign corporation may maintain an action founded upon rights involuntarily conferred upon it by operation of law, provided it is licensed at the time it institutes its action;" that appellee is not seeking to enforce a contract, but to have the court decree that the lease of December, 1906, was procured through fraud and is void, and that the acts of business said to have been done by appellee in Illinois in violation of the foreign corporation Act were "all unauthorized acts of O. B. Englisch, the owner of appellant, who is now seeking to set them up for his own benefit." The lease being void for want of power on the part of appellee to execute it, it is clear appellee cannot maintain its bill so far as it seeks affirmative relief on such void contract. The question whether unauthorized acts done by an agent in the name of a foreign corporation are business transactions of the latter done in the state in violation of law, is not now before us. As to that we express no opinion. Appellee's

argument is that appellant acquired under the lease "no real rights against appellee," that on its face "being executed by the parties, it would appear valid in a court of law, where appellee's defense is not available, and hence must be set up in chancery; that while a suit upon the contract could not be maintained by appellee, in view of its disability when the contract was made, yet that its bill in this case is not founded upon a contract, but its cause of action is involuntary on its part, and that in such case the test applied is whether the corporation was licensed at the time the suit was instituted," that appellee having been licensed at the time it filed its bill is entitled to maintain the action. In support of this contention we are referred to Thompson v. Whitehed, 185 Ill. 454-465, where it was said the rights of the corporation "are to be determined (at the latest) as of the date of the levy of the writ;" and also to McCarthy v. Chimney Construction Co., 219 Ill. 616-625, where it is said that the corporation's "rights are to be determined as of the date of the beginning of the suit." In these cases the language cited is not we think open to the construction sought to be given it. In the first of them a foreign corporation had sued out an attachment writ in this state, before it had complied with the requirements of the foreign corporation Act. The court held that it had no right then to invoke the aid of the courts of this state and therefore did not by levy of the attachment writ secure a lien upon the property in dispute; that the fact it subsequently complied with the Act and received a certificate of compliance from the Secretary of State did not make the void writ valid, and that the corporation's rights in that respect were to be determined as of the date of the levy; in other words that having no right when it began the suit and having acquired no lien under the attachment writ, it acquired none by subsequent compliance with the law. The McCarthy case was a suit by a foreign corporation on an appeal bond. It was held that the execution of the

appeal bond by the appellant to obtain a review of the case in an upper court did not constitute a "transaction of business" on the part of the appellee, whose consent to the execution of the appeal bond was not required; that inasmuch as the pleas alleged only that the appellee had not complied with the statute at the time of the execution of the appeal bond, which "was involuntary on the part of appellee," and did not allege that appellee had not complied with the statute at the time of beginning its suit on the appeal bond, "its rights were to be determined as of the date of the beginning of the suit," and not as of the date when the appeal bond was executed without its consent by another party. In the case at bar, while it is contended that the execution of the lease in controversy was a fraud on appellee, the latter did nevertheless in fact execute the lease by its then authorized officer. Such execution was not involuntary on its part. The fact that the suit in the Municipal Court which the chancellor has enjoined was without appellee's consent, does not make "the cause of action involuntary on the corporation's part." We cannot concur in appellee's contention that the test "is whether the corporation (appellee) was licensed at the time the suit was instituted." If there was any room for doubt, that question was settled by the Supreme Court in United Lead Co. v. Reedy Elevator Co. *supra.*

It is further said in appellee's behalf that the word "claim" as used in the statute does not include "defense," and that where, as here, appellee does not sue on nor seek to enforce a contract, but has an equitable defense, it may maintain an "independent bill for the sole purpose of setting up that defense;" that the foreign corporation Act does not deprive a foreign "corporation when sued of the right to defend on equitable grounds." In Catholic Bishop v. Chiniquy, 74 Ill. 317, which was likewise a suit in equity to enjoin an action at law, the language of the court is very much in point as to whether the relief sought by the bill in the case at bar and granted by the injunction under considera-

tion, constitutes an "equitable claim" in the sense in which those words are used in the foreign corporation Act above quoted. The court (p. 318) says: "The application to equity necessarily concedes the legal right and it is upon the ground that such legal right which is sought to be enforced by the action at law is subservient to an equitable claim which the defendant at law cannot set up there, that the court takes jurisdiction." And it is further said (p. 319): "Where the application is properly made, the defendant at law virtually says to the plaintiff, 'I do not controvert your legal right, but I have a claim in respect of that right which in conscience and good faith ought to control you in the exercise of it; and inasmuch as you have brought me into a forum where you can establish and enforce that right, while by the rules of that forum I am precluded from establishing my claim, I will therefore transfer the controversy to another forum, where, admitting your legal right, I shall seek, and be allowed, if I can, to establish my claim, and by doing so, control the exercise of your legal right'." See also County of Cook v. City of Chicago, 158 Ill. 524-531.

It is difficult to perceive any legitimate distinction between maintaining a suit upon an equitable claim and a bill which seeks to establish such claim. The former is forbidden to an unlicensed foreign corporation by the statute; and the prohibition must be deemed to include the latter also. We are of the opinion that such is the meaning and effect of the statute. The language is broad and we think is open to no other construction, where as here the bill does "not controvert" the defendant's legal right in the suit at law, but seeks to establish affirmatively "a claim in respect of that right" which it alleges ought in conscience and good faith to control the defendant in the exercise of that right. This is, we think, seeking to maintain a suit in equity upon an equitable claim; and where the complainant was an unlicensed foreign corporation transacting business in this state in violation of the law at the time of the transactions upon which its equi-

table claim is based, is within the prohibition of the statute.

We are compelled to the conclusion that the interlocutory injunction complained of is erroneous. It must therefore be reversed.

*Reversed.*