530    APPELLATE COURTS OF ILLINOIS.

The Journal Co. of Troy v. F. A. L. Motor Co., 181 Ill. App. 530.

## The Journal Company of Troy, Defendant in Error, v. F. A. L. Motor Company, Plaintiff in Error.

## Gen. No. 17,344.

1. CORPORATIONS—*foreign corporation.* Under the Act of May 18, 1905, the bringing of suit is not within the prohibition of "the exercise of corporate powers."

2. CORPORATION—*single act not an exercise of corporate power.* The doing of single act of business in this state by a foreign corporation is not a violation of the statute.

3. CORPORATIONS—*defense to action by foreign corporation.* In an action by a foreign corporation where defendant pleads that plaintiff is exercising corporate powers in violation of the statute, the acts relied on must have been prior to the beginning of the suit.

4. CORPORATIONS—*right of foreign corporation to sue.* In determining whether a foreign corporation is entitled to sue the statute should be construed liberally.

5. CORPORATIONS—*when foreign corporation has not exercised corporate functions in this state.*  Where a New York corporation, the business of which is ''publishing trade papers, managing trade shows and general advertising'' rents an office in Chicago which is used as headquarters for a solicitor and stenographer who send out advertising literature and correspondence, there is not an ''exercise of corporate powers'' in violation of the statute and the corporation may maintain suit on a note given in payment for advertising furnished plaintiff at a show in New York. .

Error to the Municipal Court of Chicago; the Hon. WILLIAM N. MAXWELL, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed June 30, 1913.

EASTMAN & WHITE, for plaintiff in error.

DELAVAN B. COLE, for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

This writ of error is brought to reverse a judgment for $286.48 and costs recovered by the Journal Company of Troy against the plaintiff in error, the F. A. L. Motor Company, in the Municipal Court of Chicago, January 21, 1911.

The judgment was obtained by the Journal Company of Troy on the following note given by the plaintiff in error:

"$284.29.                    CHICAGO, ILL., May 3, 1910.

Ninety days after date we promise to pay to the order of the Journal Company of Troy, New York, Two Hundred & Eighty-four. 29/100 Dollars at our office No. 171 May street, Chicago. Value received.

F. A. L. MOTOR COMPANY,
E. H. LOWE, *Secretary.*"

An affidavit setting out the defense of the Motor Company was filed in the Municipal Court which alleged that the note was obtained by fraud, and also, on information and belief, ''that the said plaintiff is a foreign corporation for profit and is not an insurance company, building and loan company or surety com-

532	APPELLATE COURTS OF ILLINOIS.

The Journal Co. of Troy v. F. A. L. Motor Co., 181 Ill. App. 530.

pany; that it is and was at the time this suit was brought doing business within the State of Illinois and not organized or existing under and by virtue of the law of the State of Illinois, or properly qualified as a foreign corporation to transact business in the State of Illinois, as by statute in such case made and provided."

Evidence was heard in the Municipal Court on both the issues thus presented, but the defense on the merits has been in this court abandoned and reliance for reversal of the judgment is placed solely on the position that the evidence disclosed the incompetency of the plaintiff to maintain a suit in the courts of Illinois because of its failure to comply with the Act of May 18, 1905, entitled "An Act to regulate the admission of foreign corporations for profit to do business in the State of Illinois." Section 1 of this Act enacts:

"That before any foreign corporation for profit shall be permitted or allowed to transact any business or exercise any of its corporate powers in the State of Illinois other than insurance companies, building and loan companies and surety companies, they shall be required to comply with the provisions of this Act as well as all other regulations, limitations and restrictions applying to corporations of like character organized under the laws of this State."

Section 6 of this Act provides that:

"Every foreign corporation amenable to the provisions of this Act which shall neglect or fail to comply with any of the provisions of the same as herein provided shall be subject to a penalty of not less than one thousand dollars ($1,000) nor exceeding ten thousand dollars ($10,000) to be recovered before any court of competent jurisdiction, and it is hereby made the duty of the Secretary of State, as he may be advised or may ascertain that any corporation is doing business in contravention of this Act, to report such fact to the Attorney General of this State, and it shall be his duty and the duty of the State's Attorney of the proper county to bring such actions at law as shall be

necessary for the recovery of the penalties imposed hereby and in addition to such penalty, if after this Act shall take effect, any foreign corporation shall fail to comply herewith, no suit may be maintained either at law or in equity upon any claim, legal or equitable, whether arising out of contract or tort in any court in this State.''

The defendant in error does not contend that it has ever complied with the provisions of the statute, but does maintain that it is not amenable to the same, and has never transacted business in the State of Illinois or exercised its corporate powers therein, within the meaning or intention of the Act of 1905 or its predecessors. The first of these disqualifying Acts was of the date of May 26, 1897, and the later ones, including that of May 18, 1905, do not materially differ from it, except that the last one adds to the prohibited actions the ''exercise of any corporate powers in the State of Illinois.''

It having been contended, however, that under the Act of 1905, the very act of bringing suit fell within the prohibition of ''the exercise of corporate powers,'' the Supreme Court in *Alpena Cement Co. v. Jenkins & Reynolds Co.*, 244 Ill. 354, and *Frank Simpson Fruit Co. v. Atchison, T. & S. F. R. Co.*, 245 Ill. 596, explicitly negatived this proposition and held that the transaction of business prohibited by these acts relating to foreign corporations meant only the ''transaction of the ordinary business in which the corporation is engaged and did not, nor did the exercise of corporate powers'' include ''acts not constituting any part of its ordinary business, such as instituting and prosecuting actions in court.'' In the *Alpena Cement Co.* case, *supra,* the court also said:

''We think the words 'corporate powers' as used in this Act refer to the franchises belonging to the corporation or those powers which are specially conferred upon a corporation for the purpose of authorizing it to do or transact the particular business in

534     APPELLATE COURTS OF ILLINOIS.

The Journal Co. of Troy v. F. A. L. Motor Co., 181 Ill. App. 530.

which it intends to engage, together with those implied powers which are necessary to enable it to carry on that business, and do not include the right to sue or any other of those powers incident to the existence of every corporation which arise from the mere act of incorporation and do not depend for their existence upon the authority to transact or engage in any particular business.''

In the same case the Supreme Court held, following and citing *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727, that the doing of a single act of business (in the *Alpena Co.* case, *supra,* the sale of five carloads of cement) did not constitute a violation of the law and was not within the inhibition of the statute.

It is plain, therefore, that neither the single transaction which was the occasion of the note, nor the reception of the note nor the bringing of the suit was inhibited by the statute.

The "transaction of business" or "exercise of corporate powers" which brought the plaintiff corporation within the operation of that clause of the statute which takes away from offending corporations the right to sue, must be found, if at all, in other activities on its part. The field for search for such inhibited action is again limited by the position heretofore taken by this court and implicitly approved by the Supreme Court, that this activity in order to be effective as a defense must have been prior to the beginning of the suit to which it is used as a defense.

In *Delta Bag Co. v. Kearns,* first reported in 160 Ill. App. 93, this court said on a question directly involved in the case:

"We hold  *  *  *  that there is no power in our trial courts in a case brought by a foreign corporation, not on a forbidden act,  *  *  *  but on a matter entirely unconnected with the transaction of any business within this State, to inflict on the plaintiff for infractions of the 'Foreign Corporation Act,' pending the

suit, the punishment for such infraction provided by the Act as an additional penalty to the fine to be enforced by criminal proceedings.''

Although for failure to file a proper finding of fact the judgment of the Appellate Court in this cause was at first reversed and the cause remanded to it for such finding, the same decision was reached and the same opinion was again filed on such remandment (173 Ill. App. 570) and on application by the defeated party to the Supreme Court a certiorari was denied, making the judgment final.

The only question, therefore, for us to consider is whether the evidence clearly shows that prior to September 20, 1910, the date this suit was begun, the defendant in error, the Journal Company of Troy, had ''transacted business'' or ''exercised its corporate powers'' within the meaning of the statute involved, and thus rendered itself incompetent to bring the suit at bar. That this proof should be clear we think follows from the highly penal character of a provision which practically outlaws an offending corporation within the state. We agree with Mr. Justice F. A. Smith, who, speaking for the Branch Appellate Court in *Chicago & M. Tel. Co. v. Type Tel. Co.*, 137 Ill. App. 131, said:

''Under the rules of construction applicable to statutes of this character this statute should be construed liberally and unless corporations of this character come within the plain provisions of the Act, it should not be so construed as to nullify their contracts and deprive them of their legal remedies.''

It would be difficult to deduce a precise rule to apply to a given case defining what is and what is not ''transacting business'' or ''exercising corporate powers'' within the state from the various and somewhat variant decisions of the Appellate Courts in this and other districts. There are many of them. Among those that have, on the facts proven or admitted by the pleadings,

536    APPELLATE COURTS OF ILLINOIS.

The Journal Co. of Troy v. F. A. L. Motor Co., 181 Ill. App. 530.

held the corporation involved in the case incompetent to sue are: *Union Cloak Co. v. Carpenter*, 102 Ill. App. 339; *Central Mfg. Co. v. Briggs*, 106 Ill App. 417; *International Text Book Co. v. Mueller*, 149 Ill. App. 509; *Simpson Fruit Co. v. Atchison, T. & S. F. R. Co.*, 152 Ill. App. 235; *Erie & M. Ry. & Nav. Co. v. Central Ry. Equipment Co.*, 152 Ill. App. 278; *Oil, Paint & Drug Pub. Co. v. Stroud*, 156 Ill. App. 312.

Among those in which this attempted defense against a foreign corporation has been unsuccessful are: *Bradbury v. Waukegan & W. Mining & Smelting Co.*, 113 Ill. App. 600; *Peoria Star Co. v. Floyd Agency*, 115 Ill. App. 401; *McCarthy v. Alphons Custodis Co.*, 125 Ill. App. 119; *DeWitt v. Walling Mfg. Co.*, 132 Ill. App. 356; *Black-Clawson Co. v. Carlyle Paper Co.*, 133 Ill. App. 61; *National Rolling Mill Co. v. Rubenstein*, 147 Ill. App. 84; *Yost Elec. Mfg. Co. v. Cavanaugh-Darley Co.*, 147 Ill. App. 418; *A. H. Woods Production Co. v. Chicago, C. & L. R. Co.*, 147 Ill. App. 568; *Lehigh Portland Co. v. McLean*, 149 Ill. App. 360; *Hill Lumber Co. v. McLean*, 149 Ill. App. 368; *Cohen-Schwartz Rail & Steel Co. v. East St. Louis Locomotive & Machine Shop Co.*, 158 Ill. App. 645; *Journal Printing Co. v. Inter Ocean Co.*, 167 Ill. App. 274; *American Sales Book Co. v. Wemple*, 168 Ill. App. 639.

But it must be noted that no Appellate Court decision is of binding authority on us unless affirmed expressly by the Supreme Court, or, as in the case of the *Delta Bag Co. v. Kearns, supra*, implicitly so affirmed by a denial of a certiorari.

The result of the variance is that each case involving this question must be determined from its particular circumstances, unless it comes within some decision of the Supreme Court. In the case at bar the following are the facts disclosed by the evidence:

The plaintiff (defendant in error here) the Journal Company of Troy, New York, is a New York corpora-

tion, the business of which is "publishing trade papers, managing trade shows and general advertising." Its principal office is in Troy, New York, at which place its contracts for advertising or show space at the exhibitions it gives are dated. The company has arranged shows or exhibitions of vehicles and of automobiles at various places. It appears that it had such a show in New York City in 1908 and one in 1909, and when this suit was begun had arranged for one on December 31, 1910, at the Grand Central Palace in that city. In 1901 it organized a carriage and harness show to be given in Chicago, and in October, 1910, it managed another show here of automobiles, trucks, harnesses and accessories, but was concerned with none here between these times.

Among their employes was one George B. Lounsberry. He was not an officer or director of the Company, but described himself in his testimony as a hired traveling salesman, who "hustled for advertising and to sell space" in the shows, both at New York and Chicago. He had been with the Journal Company several years, and traveled over the whole country but more particularly in the West. He reported his work to the principal office of the Company at Troy and received his instructions from Troy. On April 3, 1910, his headquarters were in Cincinnati, where he then resided, but he was on that day in Chicago and called on the officers of the defendant Company and solicited a contract from it to take space at the show to be given at the Grand Central Palace in New York City on December 31. A contract was entered into for such space, dated April 3, 1910, and was signed in Chicago by Lounsberry as agent for the Journal Company. The Journal Company's copy was sent by him to the office at Troy. He testified, however, that the Journal Company had never questioned his signature on such a contract or his right to sign a contract of that nature.

538    APPELLATE COURTS OF ILLINOIS.

The Journal Co. of Troy v. F. A. L. Motor Co., 181 Ill. App. 530.

The contract itself is not in the record, although admitted in evidence and marked as an "exhibit." The note sued on was given in part payment (25 per cent.) of the amount to be given for space at the exhibition and was, although post dated by a month, delivered by the defendant to Lounsberry April 3rd, the day the contract was signed. Lounsberry testified that he thought on the same trip he sold space in the show to one other manufacturer.

Under date of February 21, 1910, the Journal Company executed a lease with the owners of the McCormick Building in Chicago for an office in that building. The lease was signed by the President of the Journal Company and bore its seal. It was sent on from here to Troy to be signed. It evidenced the renting of an office to the Journal Company for three years from May 1, 1910. Lounsberry testified that although he did not know on April 3, 1910, that the Company had signed a lease for space in the McCormick Building, "the matter of Chicago Manager had been discussed for two or three years." Sometime during May, 1910, Lounsberry took possession of the office, and then for three months his family and he resided in Chicago, boarding at various hotels, "mostly where I can get advertising with them" he says. At the time of the beginning of the suit in September, 1910, he had since the middle of May been in charge of this office and occupying it with a stenographer. On the door was his name, designated as that of "Manager of Chicago office." His duties, however, he testified, were only the same as theretofore, those of "a traveling solicitor for advertising and show space for the Journal Company." He further testified:

"This office here was started more particularly on this carriage show that we opened here to have as a kind of headquarters. * * * There is a stenographer there besides myself, but no officers of the company are here. We don't transact any business there. I

have never signed a contract in that office since I have been there.   We sent out literature from there and mail.''

We do not think that this evidence makes clear proof that before the beginning of this suit the Journal Company had ''transacted business'' or ''exercised its corporate franchises'' in Illinois within the prohibition of the statute, although it must be conceded it closely approaches the line.

The business of the Company was publication and selling of advertising and the organization of shows for advertising purposes.   These shows were held at various places over the country, but the business of the Company which organized them appears, except so far as it was done by traveling salesmen or drummers, who sent their orders into the main office, to have been transacted at its main office in the State of New York.

In *A. H. Woods Production Co. v. Chicago, C. & L. R. Co.*, 147 Ill. App. 568, this court did not find that a corporation for the purpose of producing theatrical shows was doing business within this state in the purview of the statute because it gave one of its shows here, as it did in other places.

And even if supervising and arranging an exhibition here was ''transacting business'' in the state, which we do not hold, there had been at the time this suit was brought but one isolated exhibition held here, that in 1901.   The exhibition of 1910 did not take place until after this suit was begun and the right of the plaintiff fixed, so far as maintaining it was concerned. *Delta Bag Co. v. Kearns, supra.*   In 1901 ''the exercise of corporate powers''—if that phrase adds anything to the ''transaction of business''—was not within the prohibited acts.   The specification first appears in the revision of the Foreign Corporation Act in 1905.

Speaking of a sale of five carloads of cement made by the Alpena Cement Company to the Jenkins & Rey-

540 APPELLATE COURTS OF ILLINOIS.

The Journal Co. of Troy v. F. A. L. Motor Co., 181 Ill. App. 530.

nolds Company and of the effect of the Foreign Corporation Statute, the Supreme Court of Illinois in *Alpena Cement Co. v. Jenkins & Reynolds Co.*, heretofore referred to (244 Ill. 354, p. 359) said: "The circumstances under which this sale was made are immaterial, as it was but a single transaction and under the holding in *Cooper Mfg. Co. v. Ferguson*, 113 U. S. 727, was not a violation of the statute. In that case the constitution and a statute of the State of Colorado were under consideration. Each provided that no foreign corporation should do any business in the State of Colorado without complying with certain conditions therein expressed, and the United States Supreme Court held the doing of a single act of business without such compliance was not a violation of the statute. The transaction as set out in the plea under consideration here being a single act did not constitute a violation of the law as it then existed, and it would not be within the inhibition of the present Act."

Nor do we think that the renting of an office as a headquarters for employes—a solicitor and a stenographer—who sent out therefrom advertising literature and letters, brought the actions of the Journal Company within the penalties of the statute. Opening an office in this state "for the convenience and use of the secretary and treasurer" of a foreign corporation, in which office he kept the books of the corporation, was held not to show that the company was doing business in this State, by the Appellate Court of the Second District (*Bradbury v. Waukegan & W. Mining & Smelting Co.*, 113 Ill. App. 600), and Mr. Justice Puterbaugh, speaking for the Appellate Court of the Third District, said in reference to proof that letters were sent out by the agent of a foreign corporation from an office in this state on letterheads advertising the office as that of the company:

"Counsel insist that such facts support their contention that appellee was doing business in Illinois

at the time of the transaction; that when a foreign corporation has an established place of business or an agency and office located in the State, through which it transacts its business, it is doing business within the language of the statute. While the evidence referred to tended slightly to establish appellant's contention standing by itself, it has but little probative force. We do not think the mere fact that appellee had an agent in the State and that said agent had an office would have the broad effect claimed." *Pressed Radiator Co. v. Hughes,* 155 Ill. App. 80.

It is true, as we have before said, these opinions are not of binding authority on us. The propositions advanced in them, however, seem sound to us.

In the opinions of the Supreme Court affecting the question we find nothing at variance with them nor anything which seems to constrain us to a different conclusion. In *United Lead Co. v. Reedy Elevator Mfg. Co.,* 222 Ill. 199, the suit was brought for merchandise sold and delivered within the state by a foreign corporation admitted to be doing business within the state, and the only question involved and discussed was whether an after compliance with the statutory requirements made the forbidden act a legal one on which a recovery could be had.

The case of *People v. Chicago, I. & L. Ry. Co.,* 223 Ill. 581, cited by plaintiff in error, arose under another statute, the "Railroad and Warehouse Commission Act," and the court said: "In addition to the general averment in the petition that the company was doing business in this State, facts are set out from which it is manifest that this company was extensively engaged in the operation of a railroad line in this State and carried on generally the business of a common carrier of both freight and passengers."

In *Finch & Co. v. Zenith Furnace Co.,* 245 Ill. 586, p. 593, the court said:

"It was a part of the business of the plaintiff to purchase coal, but isolated transactions do not consti-

tute carrying on business by a foreign corporation in the domestic State, numerous instances of which are given in 19 Cyc. 1268.''

The illustrations thus approvingly referred to are prefaced in the Cyclopedia of Law and Procedure by this statement:

''The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another state are not a doing or carrying on of business by the foreign corporation within the latter State, even according to the weight of authority, where the transaction is of such a character as to constitute a part of the ordinary business of the corporation.''

Among the illustrations given is canvassing for subscribers by a foreign publication corporation.

We think the judgment of the Municipal Court of Chicago should be affirmed, and it is so ordered.

*Affirmed.*